Jacob Ark, J.
This is an action for a declaratory judgment with relation to the legality of the enactment by the Council of the City of Rochester (herein City) of an ordinance establishing a Police Advisory Board (herein Board).
The matter originally came before the court on a motion by the plaintiffs by order to show cause why the defendants should not be enjoined, pending the determination of the issues in the action, from conducting hearings, investigations and other acts by the Board. The order to show cause also contained a temporary restraining order. Pending the argument of the motion it was agreed among counsel that the City would move for a summary judgment so that the court could pass upon the merits of the action and, in the meantime, the temporary restraining order was vacated, except as to plaintiffs John Hunt, Nelson Evans and Joseph Favata, police officers against whom complaints are pending before the Board. The City has moved for summary judgment which is now before the court for decision.
There are two enactments by the City Council involved in this controversy: the creation of a Police Advisory Board (amendment to chapter 10 of volume II of the Municipal Code —Department of Public Safety — by adding §§ 10-10.1 through 10-10.25) under section 521 of volume I of the' Municipal Code which authorizes the City Manager to appoint -Citizen Advisory *765 Boards as may be authorized by the Council; and the amendment of section 387 of volume I of the Municipal Code entitled “ Charges and trials of policemen and firemen.”
When this proposed legislation was introduced in the Council the ordinance establishing the Police Advisory Board was apparently referred to the Law Committee and the amendment to section 387 was sent to the Public Safety Committee. These committees filed a joint report recommending the adoption of both proposals.
The salient provisions of the ordinance establishing the Board are: (1) The appointment of a nine-member board by the City Manager on which no active law-enforcement officer may serve; (2) to hear complaints against any member of the Rochester Police Bureau which alleges the use of “ excessive or unnecessary physical force against a person or persons ”, and to recommend such action as the Board thinks appropriate on each complaint; (3) the powers of the Board “are limited to those of an investigative and advisory nature, without any judicial or disciplinary powers ”; (4) a copy of the complaint is sent to the Chief of Police who must report to the Board his findings, recommendations and report of action taken, if any, together with all evidence on which they are based; (5) upon receipt of this report the Board then makes any independent investigation it considers necessary and must hold a private, closed hearing if the aggrieved, person makes a written request for such a hearing; (6) the Board then proceeds to evaluate the Chief’s report and if it agrees with him, it shall report this fact to the Commissioner of Public Safety and to the City Manager and it shall so advise the complainant and the Chief of Police, and it may make public its agreement with the Chief’s findings, recommendations and actions; (7) if it disagrees with the Chief’s decision after the evaluation of his report, it shall consult privately with him in an attempt to arrive at a “ common conclusion ”, making available to him all information and evidence in the Board’s possession; (8) the Chief shall then have the opportunity to conduct further investigations to properly evaluate any new information or evidence presented to him by the Board; (9) the Chief shall then report the result of his findings to the Board; and (10) if the Board and the Chief are unable to arrive at a “common conclusion”, the Board shall report this disagreement along with its findings and all evidence and its recommendations to the Commissioner of Public Safety and the City Manager.
Except for the last section of tire ordinance concerning the records and reports of the Board, the enactment concludes with *766 this section: “ § 10-10:24 — If within two weeks of the receipt of the report of disagreement from the Board to the Commissioner of Public Safety, and the City Manager, action which is satisfactory to the Board has not been taken by the City administration, the Board may make public its recommendation to the Commissioner of Public Safety and the City Manager. This act may be done at the public meeting of the Board.”
The amendment to section 387 provides that a charge must be signed and verified and set forth the specific act or acts and such other information required by the rules of the Commissioner, and continues as follows: ‘ ‘ After the filing of the charges, the Commissioner shall cause a preliminary investigation of the charges to be made, and if he finds that there is probable cause for such charges he may order a hearing on said charges. A copy of the charges must be given to the accused person. The hearing may be held by the Commissioner or by a person or persons designated by him who, in the opinion of the Commissioner, is qualified to hold hearings by virtue of his education, experience, or training. If the holding of the hearing has been delegated, the hearing officer or officers shall hear the charges in accordance with the rules of the Commissioner and shall report to the Commissioner for his review and decision.”
Prior to the amendment the ordinance provided that the decision of the Commissioner was final and conclusive, but the amendment added the provision that it was “ subject only to review by a court of competent jurisdiction. ’ ’
It is the City’s position that “ the new ordinance establishing the Police Advisory Board was intended to supplement, complement and be consistent with the provisions of § 387.”
The City in its oral argument and in its brief urges that the creation of the Board “was to establish a~procedure whereby a distinguished body of citizens would aid the Commissioner of Public Safety in screening written, verified charges brought to the Board’s attention, and provide the Commissioner of Public Safety evidence, findings and recommendations to help him determine whether the filed complaint forms a sufficient basis for a departmental disciplinary hearing as authorized by § 387.”
This section provides that: “The hearing may be held by the Commissioner or by a person or persons designated by him”, but makes no provision for a designation of anyone to conduct the preliminary investigation for probable cause, the role assigned to the Board under the ordinance, according to the City. The fact is that the members of the Board are not the appointees of the Commissioner, as the ordinance establishing it specifically provides that its members are to be, and *767 in fact were, appointed by the City Manager pursuant to section 521 of the Municipal Code. Under section 387 the City Manager performs no function as the “ decision of the Commissioner is final and conclusive ”, and by the 1963 amendment to this section, the Commissioner’s decision is “subject only to review by a court of competent jurisdiction.”
While the Board was created by the Council pursuant to section 521 of the Municipal Code and its members were appointed by the City Manager, there is nothing in section 387 to warrant his participation in a disciplinary proceeding against a police officer, either directly or by means of an agency or board appointed by him.
This section does not provide for the designation of a person or persons by the Commissioner to conduct the preliminary investigation of the charges for probable cause as it does for the conduct of a hearing on charges after the finding of probable cause. Even if it should be implied that he has such a right, the ordinance has stripped him of this prerogative. Where a hearing by a designee is permitted the failure to obtain written authorization is jurisdictional and fatal to a proceeding. (Matter of Blount v. Forbes, 250 App. Div. 15, 17.) Without a finding of probable cause by the Commissioner there can be no hearing and upon principle it would seem that his participation in the initial step is vital.
It is understandable that the responsibility of making the preliminary investigation be given to the Commissioner who is experienced in police matters. He is in a better position to make a judgment as to what force was necessary under a given set of circumstances and whether the police officer was faced with a situation that gave no time for calm reflection but acted reasonably under the exigency that confronted him. This requires an independent appraisal on his part.
Section 387 is the City’s grant of power to discipline a police officer even to the point of dismissing him from service. It is also the employee’s right to have the full protection of this statutory provision.
Under the ordinance the public official who is the principal actor is the Chief of Police, who plays no part in the disciplinary proceeding under section 387, unless the Commissioner, in his discretion, assigns some function to him.
The City furnished to the court the rules and regulations of the Police Department concerning charges and trials, issued June 1, 1960. They are very meager, consisting of one section of two brief paragraphs concerning charges, and another section consisting of four short paragraphs concerning trials, *768 Nevertheless, they are not inconsistent with section 387, which generally follows section 75 of the Civil Service Law, except that they provide that the Commissioner shall preside at a trial, which is without legal effect by reason of the 1963 amendment.
Under the ordinance, the only role the Commissioner plays is that of being the recipient, together with the City Manager, of the Board’s report that it agrees with the Chief’s findings, recommendations and actions, or in the event the Board and the Chief of Police are unable to arrive at a common conclusion, the report of this disagreement. In the latter case, as pointed out, the City administration has a period of two weeks in which it may take action satisfactory to the Board, and in the event it fails to do so the Board may make public its recommendations to the Commissioner and City Manager.
If the Board was created for the purpose of assisting the Commissioner in making a determination whether a filed complaint forms a sufficient basis for a departmental disciplinary hearing as stated by the City, the query arises as to how he is assisted by arming the Board with the threat of public confrontation with the City administration when there is a disagreement between the Chief and the Board which is not adjusted to the Board’s satisfaction.
The Board in its oral argument and brief maintains that “ the ordinance is a constitutionally valid method of criticizing publicly the official conduct of policemen ’ ’ and frankly states: “ What is in issue is the right of the Board to criticize publicly the conduct of policemen.” It says that it has no judicial or disciplinary powers, and it is so stated in the ordinance. Yet, Point I of its brief, however, is devoted to this proposition: “ The ordinance is a reasonable regulation for the government and discipline of the police bureau enacted by the City Council which has the authority to enact it and compel obedience by reasonable means.”
The Board overlooks the fact that although its membership consists of nine highly respected members of the community, when it makes a public statement it does not speak for them as individuals, but with the authority of an official body of the City of Rochester, N. Y. Its public criticism of a police officer bears the imprimatur of the City of Rochester, N. Y.
This constitutes a reprimand which is defined in Webster’s New International Dictionary (2d ed., Unabridged) as: “ A severe or formal reproof; a censure, esp. one given with authority”.
Section 387 provides: “ If the accused person is found guilty of the charge against him, the Commissioner may punish him *769 by reprimand, by forfeiture of pay for some definite time, by a fine not exceeding fifty dollars, by a reduction in grade, or by dismissal from the force, or may subject him to any other discipline prescribed in the rules promulgated by the Commissioner of Public Safety.” (Emphasis supplied.)
The Board seeks to do that which can be done only by the Commissioner after a hearing and a finding of guilt against a police officer.
1‘ Investigations should not be conducted so that harmful publicity is used in lieu of the sanctions provided by law.” (Matter of Applegate v. Waterfront Comm., 23 Misc 2d 1090, 1091.)
An exhibit submitted by the Board is a letter addressed to plaintiff George A. Signor which concludes with this paragraph: ‘ ‘ Although the evidence adduced is inconclusive, it is of such a character that it cannot be ignored. Therefore, the Board has voted to accept the recommendation of the City Administration that this complaint, its investigation, and findings, be made a part of your official personnel files.”
It would seem that this violates the police officer’s rights under section 387 as it could very likely have an effect upon his service record rating in determining his merit and fitness for promotion as provided under section 6 of article Y of the State Constitution.
The City urges that the creation of the Board is an additional agency, working with others, in the area of human relations and that the procedures established by the ordinance protect the policeman, the principal beneficiaries of the ordinance, from unsubstantiated charges. On the contrary, the police officers say that they are seeking deliverance from their protector.
The joint report of the Public Safety and Law Committees of the City Council recommending the adoption of the enactments mentions the many problems facing Rochester and other American urban communities. All decent citizens should make their full contribution in the attempt to solve them. This court, however, cannot pass upon the philosophy of a Police Advisory Board toward that end, but only upon its legality.
In People ex rel. Beck v. Graves (280 N. Y. 405, 410) the court held: “ ‘ The constitutional validity of law is to be tested, not by what has been done under it, but what may, by its authority, be done. ’ (Stuart v. Palmer, 74 N. Y. 183, 188; People ex rel. Barnard v. Wemple, 117 N. Y. 77, 84; Gilman v. Tucker, 128 N. Y. 190, 200; City of Rochester v. West, 164 N. Y. 510; Matter of Richardson, 247 N. Y. 401, 421; Rosalsky v. State of New York, 254 N. Y. 117, 121.)”
*770 Although this authority refers to possible consequences of a law, as to the test of its validity, upon the papers before the court it is clear that the functions of the Board have actually become intertwined with the operation of the Department of Public Safety, and particularly the Police Bureau, in violation of the rights of a police officer against whom a complaint was filed.
In People v. Cook (197 App. Div. 155, 162, affd. 236 N. Y. 505), there is this language: “ It is a familiar principle that a statute may be unconstitutional in part and valid in part, if the parts which are void can be separated from those which are valid. (Presser v. Illinois, 116 U. S. 252; People ex rel. Devery v. Coler, 173 N. Y. 103.)”
One of the two concluding paragraphs of the joint report of the Council’s committees contains this pertinent paragraph: ‘‘ In summary, the creation of a Police Advisory Board as proposed in the ordinance, allows complaints to be registered through a non-police agency while allowing regular police procedures full opportunity to satisfy the complainant.”
This expression of the Council’s committees can be given effect by applying the principle of severance in separating the functions of the Board (People v. Mancuso, 255 N. Y. 463, 473) and exscinding the invalid parts of the ordinance. This requires the removal of its power to investigate and recommend action on a complaint as contained in section 10:10.2, the right to investigate as provided in section 10:10.4 and the elimination of sections 10:10.17 to 10:10.24 inclusive. Its rules of practice and procedure should be amended accordingly.
Any matter in the personnel files of a police officer emanating from the Board and not processed in accordance with section 387 of the Municipal Code is to be expunged.
The City’s claim that the plaintiffs are estopped from attacking the constitutionality of an ordinance which has been in effect and operation since March 26, 1963, on the ground of laches, is without merit. “A public body cannot acquire a nonexistent power because resistance to its exercise thereof is long delayed.” (Matter of Board of Higher Educ. of City of N. Y. v. Carter, 26 Misc 2d 989, 991, mod. 16 A D 2d 443, revd. in part 14 N Y 2d 138.)
Under CPLR 3212 (subd. [b]): “If it shall appear that any party other than the moving party is entitled to a summary judgment, the court may grant such judgment without the necessity of a cross-motion.”
Judgment in accordance with this memorandum decision.