Frahcis T. Murphy, Jr., J.
Plaintiffs, patrolmen in the Police Department of the City of New York, have instituted a class action for a declaratory judgment, and for a permanent injunction restraining the defendants from implementing and enforcing General Order No. 14 issued by the Police Department, Office of the Commissioner. Pursuant to a stipulation entered into by the respective parties, the action for decision has been submitted upon a motion for summary judgment by the plaintiffs, and a cross motion for the identical relief by the defendants, John V. Lindsay, as Mayor of the City of New York, and Howard R. Leary, as Police Commissioner of the City of New York. Pursuant to leave granted by the court, the New York Civil Liberties Union appears herein amicus curiae in opposition to plaintiffs’ motion, and in support of defendants’ motion for summary judgment dismissing the complaint.
The subject of the instant action, namely, the Police Commissioner’s General Order No. 14, concerns the establishment of a Civilian Complaint Review Board. Plaintiffs assert that the creation thereof, and the procedures established thereby for the processing of complaints by civilians against the police, pertaining to various types of alleged police misconduct, are invalid and illegal.
At the outset, plaintiffs refer to the 1965 New York City mayoralty campaign, and charge that the then candidate, now *61 Mayor, defendant John V. Lindsay, stated that upon his election, he would urge that the Police Department’s Civilian Complaint Review Board be reconstructed. Thus, he contended that he would seek a board dominated by civilians appointed by the Mayor in place of a board composed of policemen appointed by the Police Commissioner. The plaintiffs argue that while the Police Commissioner’s General Order No. 14 effectively implements that promise, the Civilian Complaint Review Board created thereby is violative of the existing statutory provisions.
The effectiveness of the civilian complaint procedure currently in existence in the City of New York has been the subject of numerous studies by Bar associations, vigorous editorials in newspapers, feature articles in periodicals, critical examinations in legal journals, lengthy discussions on radio and television, as well as street corner debate. Public interest and concern, pertaining to the procedures delineated for the processing of civilian complaints against the police, reached a high pitch during the Summer of 1964 when riots erupted in the Harlem and BedfordStuyvesant areas in this city. Since then, diverse criticisms have been leveled against the existing method of processing civilian complaints against police officers.
Perhaps the most consistent source of discontent expressed by proponents of a revised procedure is that the current civilian complaint system is entirely dominated by members of the Police Department. While it has been contended that the “ three deputy commissioners presently serving on the Department’s Civilian Complaint Review Board, and the deputy who serves as trial commissioner when Departmental charges are preferred against police officers,” are all nonuniformed civilians responsible to the Commissioner (see statement of Vincent L. Broderick appearing before the Committee on City Affairs of the City Council, June 29, 1965), it is clear that each is a paid employee-of the Police Department. Thus, it has been argued that the present method for processing complaints against policemen has resulted in a lack of confidence in its impartiality and effectiveness, and that the “ public apparently has not been sufficiently assured ’ that quick and effective action is taken against policemen who abuse their authority or use unnecessary force ” (Report of Committee on Civil Rights, New York County Lawyers Assn., Bar Bulletin, vol. 22, No. 5, p. 232).
Yet, even while respected and outspoken members of the community clamor for a change, it is generally conceded that incidents of police misconduct are, in actuality, the exception rather than the rule. In addition, the New York County Lawyers Association, in examining the procedure and the criticisms of *62 the existing system, has stated that the “ present members of the Civilian Complaint Review Board are of high caliber and there is no apparent ground to doubt their fairness ” (ibid., p. 232).
The arguments espoused by those who favor at least partial nonpolice participation on a Review Board are, in brief: that various groups, most particularly minority groups, distrust a police-oriented board on the ground that its members will be inner directed and overly protective towards their cohorts — “ the men on the beat ”; that it should be emphasized, once and for all, that the police are the servants of the people; that policemen who properly perform their duties have nothing to fear; that unfounded charges against the police would be exposed; and that a civilian controlled review board will serve to lessen strained community relations.
On the other hand, various individuals and groups, led by law-enforcement officials, argue that membership -on review boards should be limited to Police Department personnel for the following reasons; police morale will be adversely affected if the board is composed of civilians; a degree of expertise and familiarity with police problems is required of those serving on a review board; the existence of a board dominated by civilians may deter an officer from exercising the necessary and proper authority at a critical moment for fear that his actions may not only be subject to criticism, but that he may be exposed to unwarranted civilian complaints; and, because the Police Department is a pari-military organization, discipline should remain entirely within the domain of Police Department personnel.
One of the most cogent analytical studies, made of existing review procedures in cities throughout the United States, is contained in an article entitled “ The Administration of Complaints by Civilians Against Police ” (77 Harv. L. Rev. 499 [Jan., 1964]). The -objective of a balanced complaint procedure is set forth therein: “ A properly administered complaint review system serves both the special professional interests of the police and the general interests of the community. As a disciplinary device, it can promote and maintain desired standards of conduct among police officers by punishing — and thereby deterring — aberrant behavior. Just as important, it can provide satisfaction to those civilians who are adversely affected by police misconduct. In serving these ends, complaint administrators must not impair the effectiveness of the police as a law-enforcement organ. At the same time, due to the exceptional coercive powers of the police and the impact on individual *63 liberties inherent in their work, the civilian community’s interest in police activity should not be underestimated. Public confidence, vital to an effective police department, can be fostered by a well-run and well-publicized complaint review system.”
The Harvard Law Review note {supra) discusses the observation often made that the administration of civilian complaints should be left in the domain of the courts. Undoubtedly, many complaints are more properly referrable to a Grand Jury than to a Civilian Complaint Review Board. The historical nature and function of the Grand Jury are seemingly designed for the redress of alleged police misconduct. But, more often than not, its accessibility has been overlooked in the heat of an academic debate over the viability of civilian review boards. Pursuant to section 253-a of the Code of Criminal Procedure the “ grand jury, upon concurrence of twelve or more of its members, may submit to the court * * * a report * * * concerning non-criminal misconduct, nonfeasance or neglect in office by a public officer or employee as the basis for a recommendation of removal or disciplinary action ” and the “ district attorney shall deliver a true copy of such report * * * for appropriate action, to each public officer or body having removal or disciplinary authority over each public officer or employee named therein. ’ ’ On the other hand, ‘where the only redress sought by the complainant is an apology or assurance that a particular infraction will not recur, judicial recourse seems not appropriate ” (Harv. L. Rev., supra, p. 500).
The legal impediments to complete redress by way of a civil suit against municipal bodies and/or a policeman, as a result of alleged misconduct, qualifies the value of such a proceeding (see, generally, Foote, Tort Remedies for Police Violations of Individual Rights, 39 Minn. L. Rev. 494 [1955]).
A wide range of suggested changes in the civilian complaint procedure now in existence in the City of New York has been proposed. The pointed objective of each appears to be the same, namely, to “ attempt to insure that legitimate complaints are investigated properly, heard impartially and disposed of fairly.” (Joint Report on Police Advisory Board for Civilian Complaints of the Committee on Administrative Law and the Committee on Municipal Affairs, Association of the Bar of the City of New York [1965]).
The court is mindful of the public debate in progress over the desirability of a revised review board as well as the political, philosophical and social ramifications of the Commissioner’s *64 proposed order. The judgment had herein, however, is necessarily confined to the legal question involved for beyond that question, this court may not go.
On or about May 2, 1966, the Police Commissioner issued General Order No. 14. Thereafter, on or about May 17, 1966, that order was amended in part, although its essential provisions remained intact. General Order No. 14 represents a considerable variation from the existing review procedure. Of critical significance, the order establishes a Civilian Complaint Review Board composed of seven members, four of whom are appointed by the Mayor, while three additional members are appointed by the Police Commissioner. The four members selected by the Mayor are to be from outside the city government, while those chosen by the Commissioner are to be from the membership of the Police Department (General Order No. 14, par. 21/3.0).
The staff of the Review Board is to include an Executive Director, a Deputy Director and an Assistant Director. The three afore-mentioned positions are to be filled pursuant to an appointing process, whereby the Police Commissioner is to request that the Mayor recruit and screen qualified candidates and recommend an individual for the position in question. If the Commissioner does not wish to appoint the individual recommended by the Mayor, he requests the Mayor to submit another recommendation. This process is repeated until the Mayor submits an individual who is satisfactory to the Police Commissioner, wdio in turn then makes the formal appointment. The Commissioner “ appoints one of the candidates recommended [to him] by the Mayor ” (par. 21/3.3).
One other salient provision contained within General Order No. 14 need be noted at this juncture. Paragraph 21/15.0 sets forth that the “ recommendations of the Board shall be advisory only and shall in no way limit the authority of the Police Commissioner to dispense discipline within the department The complaint alleges that the Police Commissioner’s General Order No. 14 is illegal and invalid on its face in that:
“ (a) It invades the powers of the Police Commissioner of the City of New York to control the conduct and discipline of the members of the Police Department;
“ (b) It constitutes an illegal and invalid delegation of power to civilians;
“ (c) It constitutes an illegal and invalid assertion by the defendant Mayor of power belonging to the defendant Police ■ Commissioner j
*65 “ (d) It constitutes an illegal and invalid attempt by the defendants to assert powers belonging to the legislature alone and not to administrative or executive officers of government;
“ (e) It subjects members of the Police Department to the investigation, examination and hearing of charges against them in a manner other than that prescribed by law;
“ (f) It deprives members of the Police Department of due process of law;
“ (g) It violates Sections 431, 434 and 1103 of the New York City Charter, Sections 434A-14.0 of the Administrative Code of the City of New York, Section 75 of the Civil Service Law of the State of New York, Article I, Sections 6, 11 and 12, Article 5, Section 6 and Article 9, Section 1 of the Constitution of the State of New York, and the Fourteenth Amendment of the United States Constitution, as well as other applicable provisions of law.”
The voluminous papers and briefs submitted hereon are replete with references to the powers of the Mayor. In support of the respective positions relating to the nature of the office of the Mayor of the City of New York, the court is requested to look with significance upon specific provisions contained in the General City Law, the New York City Charter and in case law. The citations are without prominence. The Mayor’s role, within the context of the General Order, is at best incidental. In fact, it does not appear that the Mayor is a necessary party to this action. General Order No. 14, on its face, emanates from the office of the Police Commissioner and not from the chief executive of the City of New York. While the parties may attribute the General Order in issue at bar to the Mayor, the court will not draw that inference, especially when the directive clearly indicates that the Police Department’s chief officer has been responsible for the issuance thereof.
In substance, then, the court is concerned solely with whether the Police Commissioner possessed the power and authority to issue General Order No. 14. A resolution in the negative would serve to enjoin only the Commissioner; that finding would have no deleterious effect upon the Mayor. An affirmative determination would, of course, impel this court to grant judgment to the defendants.
With respect to the four civilians to be appointed by the Mayor to the Civilian Complaint Review Board, the court finds that General Order No. 14, in its present design, is valid. Subdivisions a and b of section 434 of the New York City Charter provide that the Commissioner shall have ‘ ‘ cognizance and con- *66 tr'ol of the government, administration, disposition and discipline of the department ’ ’, and that he ‘shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.” Moreover, the Commissioner alone possesses the authority to punish a member of the force for dereliction of duty (Administrative Code of City of New York, § 434a-14.0).
The unambiguous language contained in the above statutory provisions effectively rests broad administrative power in the Police Commissioner. In pursuant of the duties and obligations imposed upon him by statute, the Police Commissioner has apparently determined that the proper control and administration of the Police Department may best be effectuated by resort to a civilian advisory board. No legal obstacle exists which may bar the exercise of the Police Commissioner's discretion. Nor has any nefarious motive been ascribed to his decision. Quite to the contrary, the expressed objective of General Order No. 14 is to insure that ‘ the entire community has confidence in the impartiality of the administrative machinery which supervises the exercise of police power. ’' It is altogether clear, too, that the Police Commissioner should be permitted to operate this most critical city agency with sufficient aid, if required and requested. It is not the province of any individual, or organization, or, indeed, the court, to dictate to an appointed public official how he may best command his department.
A studious examination of the introduction to the General Order, and the Order itself, indicates that Commissioner Leary Was cognizant of the criticisms that have been made against the current Civilian Complaint Beview Board. The Commissioner has apparently determined that the needs of the community mandate a change in the existing procedure to provide a review board dominated by civilians. The decision is his alone, by statute, and this court may not sit in judgment upon that determination.
That the Mayor has been designated to make four appointments to the panel is of no serious moment, since the Police Commissioner could just as easily have requested the assistance Of such others whose judgment he Values to aid him in the appointment of members to this advisory board. Once again, this court Will not seek to intervene in the administration of the Police Department. A dictation to the Police Commissioner, restricting the manner in which board members áre to be selected, would constitute an unwarranted intrusion by the Court Upon the right of the agency chief to control and administer his department.
*67 The plaintiffs contend that section 1103 of the New York City-Charter bars the appointment of review board members by-anyone other than the Police Commissioner. That provision states the ‘ ‘ heads of all agencies shall, except as otherwise provided by law, have power to appoint and remove * * * all chiefs of bureaus and all other officers, employees and subordinates in their respective departments or offices * * * and to assign to them their duties.” It is apparent that section 1103 does not apply to the establishment of a purely “ advisory ” board, the existence of which depends entirely upon the Commissioner’s desire to utilize such assistance. It cannot be argued that those members serving either directly or indirectly at the behest of the Commissioner, are either “ officers, employees [or] subordinates ” of the Police Department, within the meaning of section 1103.
However, since the staff members are “employees” of the Police Department, appropriate provision has been made in compliance with section 1103 of the charter. The fact that the appointments to said staff positions proceed by recommendation of the Mayor is of no consequence, since the Police Commissioner may seek recommendations for such appointments from anyone in whose judgment he has confidence. In this instance, he has selected the Mayor to recruit and screen qualified applicants. He may, at any time, and at his pleasure, designate someone other than the Mayor to perform this preliminary function. Plaintiffs’ reliance upon the case of People ex rel. Balcom v. Mosher (163 N. Y. 32), is misplaced. In that case it was held that a statute which required the local appointing authority to appoint only the single person standing highest on an eligible list deprived him of the power of selection and of his constitutional right to appoint. The court pointed out that the civil service provisions of the New York State Constitution do not permit the State Civil Service Commission to so designate one person, but only to certify the list of qualified applicants; and that, pursuant to the now article IX (§ 1, subd. [b]) of the Constitution, the local official vested by law with appointment power could not be constitutionally divested of such power by a process which permitted the Commissioner to name the man who must be appointed.
The court recognized that if the statute had permitted a choice, the constitutional power of selection and appointment would have been preserved (pp. 39-40, 43). Hence, it was stated that “ a choice * * * seems to preserve the authority of the appointing power, and to allow a sufficient variety of capacity for answering the needs of the public business ” (p. 40).
*68 In the instant case, the Mayor’s recommendations to the Police Commissioner of staff officers may or may not he accepted. The mayor is merely a conduit. Absolute discretion as to the actual choice is left with the chief of the department, namely, the Police Commissioner, and the defect inherent in the Balcom case is not present herein. The officer vested with the power of appointment must ultimately select the persons to be appointed. He may listen to the recommendation and advice of others, but the selection must finally be Ms act ” (People ex rel. Kresser v. Fitzsimmons, 68 N. Y. 514, 518; italics added). And, indeed, General Order No. 14 does little more than seek to have the appointing authority listen to recommendations for the selection of staff officers (vis., Executive Directors, etc.). Under the circumstances, the provisions for the selection of the Executive Director, Deputy Director, and Assistant Director are not invalid, nor are they contrary to the law of this State. A final determination rests solely with the Commissioner. “ Freedom to appoint is left with the appointing power ” (People ex rel. Qua v. Gaffney, 142 App. Div. 122, 125, affd. 201 N. Y. 535).
The plaintiffs stress that General Order No. 14 invades the power of the Police Commissioner to control and discipline the members of the department. It is contended that the order issued by the Police Department unlawfully attempts to transfer to the Mayor and his appointees this power which the Legislature has specifically vested in the Commissioner and the latter’s appointees.
Section 431 of the New York City Charter sets forth that the head of the Police Department shall be a Police Commissioner appointed by the Mayor. Charter section 434 vests control of the department in the Commissioner. Subdivision (a) thereof provides that the Commissioner “ shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force. ’ ’. Subdivision b of section 434 additionally sets forth that the Commissioner ‘‘ shall be chargeable with and responsible for the execution of all laws and the rules and regulations of the department.”
The vast amount of legal, philosophical and sociological thought embodied in plaintiffs’ papers pertaining to the necessity of maintaining authority for discipline and obedience in the Police Department is admirable. But, when viewed against the procedures set forth in the General Order herein involved, it appears that the concern with respect to that aspect of the *69 subject order is unfounded. There has not been a delegation of the Police Commissioner’s decision-making or investigative powers to the Mayor with respect to departmental discipline; the order merely makes available to the board, for examination, the entire record of the preliminary investigations made by the Commissioner’s staff before the Commissioner acts. The board submits a recommendation to the Commissioner, and the latter is required by law to make an independent decision. The board’s advisory recommendations are, of course, not binding upon the Commissioner. Even the preliminary investigatory proceedings are under the direct supervision of the Commissioner, since the staff administrators are answerable solely to him. It cannot be said, therefore, that an unauthorized delegation of powers results when the head of the agency — the Police Commissioner — decides to avail himself of the board’s recommendations. Clearly, “ a man may make use of the judgment of another upon whom he can depend, and the valuation of that person is his if he chooses to adopt it” (Bangor Sav. Bank v. Niagara Fire Ins. Co., 85 Me. 68, 75; Simons v. Mills, 80 Cal. 118).
Plaintiffs have also placed undue emphasis upon subdivisions a and b of section 434a-14.0 of the Administrative Code in support of the proposition that the Police Department’s General Order, now under attack, will leave the Commissioner without disciplinary power vis-a-vis members of the force. Subdivision b is of especial significance in providing that policemen “ shall be fined, reprimanded, removed, suspended or dismissed from the force only on written charges made or preferred against them, after such charges have been examined, heard and investigated by the commissioner, one of his deputies or the assistant to the commissioner”. In conjunction therewith, plaintiffs refer the court to section 75 of the Civil Service Law, which provides that an employee “ shall not be removed or otherwise subjected to any disciplinary penalty provided in this section except for misconduct shown after a hearing upon stated charges pursuant to this section.” And in subdivision 2 of section 75, it is further provided that the hearing upon such charges ‘ ‘ shall be held by the officer or body having the power to remove the person against whom such charges are preferred, or by a deputy or other employee of such officer or body designated in writing for that purpose.” Furthermore plaintiffs refer to chapter 834 of the Laws of 1940, applying to police departments throughout New York State, wherein it is stated that hearings upon charges “ shall be held by the officer or body *70 having the power to remove the person charged with incompetency or misconduct or by a deputy or other employee of such officer or body designated in writing for that purpose.”
Plaintiffs argue that the cited statutory provisions indicate that General Order No. 14 is invalid in permitting investigations of charges to be conducted at the direction of the Executive Director; that hearings will be conducted before civilian hearing officers, who, though appointed by the Commissioner, are other than the officials specified in subdivision b of section 434a-14.0 of the Administrative Code; and that the board itself will be dominated by civilians. Thus it is contended that the duly designated official of the administrative agency may not delegate his quasi-judicial and discretionary functions to persons who are neither officials nor employees of the agency or of the governmental body of which the agency is an arm (citing Matter of New York Evening Enquirer v. Kennedy, 18 Misc 2d 950).
The plaintiffs’ argument in this regard is specious. Charter section 434 and Administrative Code section 434a-14.0 are designed to allow the Police Commissioner to prefer written charges of misconduct against a member of the force after formal charges have been made by the Commissioner upon examination and investigation. There is little doubt that the investigation alluded to in section 434a-14.0 relates only to charges preferred by the Commissioner, who, within subdivision a, is the official having the power to discipline a member on the basis of such charges. The court finds that subdivision b of section 434a-14.0 is effectuated only after charges have been preferred by the Commissioner. The investigative machinery offered under General Order No. 14 relates only to a preliminary procedure quite apart from the process by which the Commissioner takes action within the purview of section 434a-14.0. It is apparent that section 434a-14.0 is not concerned with the investigation as a result of which the Commissioner ultimately determines whether formal charges should indeed be lodged. There is no indication at all, upon a reading of General Order No. 14, that the method by which the Commissioner is to proceed, after charges have been preferred, will be affected thereby. Accordingly, plaintiffs’ assertions as to the alleged violation of the several statutes noted above, are without merit.
The respective parties have extensively discussed the case of Locust Club of Rochester v. City of Rochester (48 Misc 2d 763) in which the court granted an injunction against the functioning of a “ Police Advisory Board.” In that case, the City Council had passed an ordinance authorizing the City Manager *71 to appoint a board specifically empowered to screen charges and to provide the Commissioner of Public Safety with evidence, findings and recommendations. The intention was to aid the Commissioner of Public Safety in determining whether she filed complaint formed a sufficient basis for hearings. It is to be noted that it was not an action by the Commissioner of Public Safety, but by the City Council, which gave the power of appointment ta the City Manager. In the instant case, the issuance of General Order No. 14 was the voluntary act of the Police Commissioner.
After careful consideration of all the arguments advanced, none of the objections raised by plaintiffs as hereinabove set forth are sustainable.
Even while the issues relating to the desirability of a Civilian Complaint Review Board have forged to the forefront of daily news reports, substantial evidence is exhibited, day after day, that New Yorkers have every reason to be justifiably proud of their police force. Concomitant with every press release calling for a reconstructed board, one finds the minor news item detailing another heroic act of a police officer. By virtue of its dedication, efficiency and discipline, the Police Department of this city has earned the respect of our citizenry and the reputation of being “New York’s Finest”. One can only hope that the review board will not detract from the present high standard maintained by the force. Too often, it is insisted that there be legal limitations upon police powers. Perhaps not enough has been said about the converse, to wit, the public’s duties to the police. The rallying call that the “ police are the servants of the people ” should never be construed to mean that the “ police are subservient to the people ”. The concept of equality together Avith a recognition of the duties and rights of citizenship, and the proper place of authority under law, must be common objectives.
The plaintiffs have alluded to the possible effect General Order No. 14 may have upon the morale of the police force. Whatever may be the effect upon implementation, that consideration is not the primary concern of the court, but of the Police Commissioner himself. This is so because, by law, the responsibility is his alone. Undoubtedly, the Commissioner took the question of morale into consideration prior to the issuance of General Order No. 14. If, in its application, problems develop, or it interferes Avith correct, orderly and efficient police work, the Commissioner is vested with the poAver to modify or revoke the order.
*72 The court wishes to extend its appreciation to counsel representing the plaintiffs, defendants, and amicus curies for the manner in which the issues were presented with respect to both the affidavits and briefs submitted hereon, and for the excellence of the oral arguments.
Motion by plaintiffs is denied, and the cross motion by defendants for summary judgment dismissing the complaint is granted.