LOCUST CLUB OF ROCHESTER et al., Respondents, *v.* CITY OF ROCHESTER et al., Appellants.

Fourth Department, January 11, 1968.

*Robert A. Feldman, Corporation Counsel (Thomas R. Frey* and *Ruth B. Rosenberg* of counsel), for appellant.

*Ronald J. Buttarazzi* for respondents.

*Benjamin Phelosof* for American Civil Liberties Union, *amicus curiæ.*

BASTOW, J. P. Plaintiffs brought this action seeking a declaration as to the validity, legality and constitutionality of an enactment of the Rochester City Council creating a Police Advisory Board. The order appealed from in substance stripped the Board of all the functions granted by the ordinance, except the right to receive and file complaints of the use of excessive or unnecessary force by members of the Rochester Police Bureau.

A proper understanding of the issues presented requires examination of the provisions of the ordinance. The Charter of the City of Rochester (§ 12-31, formerly § 521) authorizes the City Council to establish citizen advisory boards the members of which are appointed by the City Manager. In March, 1963 chapter 10 (now ch. 17) was added to the Municipal Code of the City of Rochester.[1]

This chapter established a Police Advisory Board (Board) with jurisdiction to consider complaints against members of the police force which alleged " the use of excessive or unnecessary physical force " by any such member (§ 17-3, formerly § 10-10.3). Its powers are limited to " those of an investigative and advisory nature, without any judicial or disciplinary powers " (§ 17-4, formerly § 10-10.4). After a written complaint has been made to the Board a copy is forwarded to the Chief of Police (§ 17-16, formerly § 10-10.16) who must within 10 days reply thereto with a writing containing his findings, recommendations, report of action taken and the evidence upon which the findings are based (§§ 17-18, 17-19, formerly §§ 10-10.18, 10-10.19). Upon receipt of the Chief's report the Board may make an independent investigation with the right to hold private closed hearings. Such must be held if demanded by the aggrieved party (§ 17-20, formerly § 10-10.20).

---

[1] The Code was adopted by the City Council on November 25, 1941. By Local Law No. 4 of 1965 it was re-codified and renumbered. The same law also renumbered the sections of the charter. Both old and new section numbers will be given herein.

The enactment provides differing procedures in a proceeding where the Board agrees with the findings of the Chief of Police from those where the Board disagrees therewith (§§ 17-21 to 17-23, inc., formerly §§ 10-10.21 to 10-10.24). Where there is agreement the Board reports that fact to the Commissioner of Public Safety (Commissioner) and to the City Manager and so advises the Chief of Police and the complainant. If the complaint has received "public notice" the Board may "make public its agreement with the Chief's findings, recommendations and actions."

On the other hand, if the Board disagrees with the decision of the Chief of Police it must consult privately with him in an attempt to arrive at a common conclusion. The Chief has the right to make a further investigation but if thereafter the disagreement continues the Board must so report to the Commissioner and the City Manager "along with its findings and all evidence on which the findings were based, and its recommendations". Finally, section 17-24 (formerly § 10-10.24) provides that if "action which is satisfactory to the board has not been taken by the city administration" within two weeks from the receipt by the Commissioner and the City Manager of the Board's report of disagreement the latter at a public hearing "may make public its recommendations" to the two city officials.

In January, 1965 the Board adopted a set of rules which set forth in detail regulations for practice and procedure. Among other things, it is provided that the police officer against whom a complaint has been filed is permitted to file a written verified answer to the complaint and to appear in person and by counsel. The hearing is to be private and witnesses are excluded except when giving testimony. These rules were adopted following the receipt of a written opinion from the Corporation Counsel, which advised the Board, among other things, that the respondent police officer had the privilege of asserting his constitutional rights to refuse to appear and if he appeared to assert his privilege against self incrimination.

Pertinent to the issues presented are the provisions of section 8-34 (formerly § 387) of the City Charter. This is the familiar enactment placing in the Commissioner of Public Safety, authority to investigate a written verified charge made against a police officer, direct a public hearing thereon before himself or his designee and upon a finding of guilt to impose a penalty, among others, of a reprimand.

Special Term in substance concluded (48 Misc 2d 763) that section 17-24 (formerly § 10-10.24) authorizing the Board to make

public its recommendations to the Commissioner and the City Manager in a proceeding where action satisfactory to the Board had not been taken by the city administration fatally invaded the Charter provision authorizing the Commissioner to impose disciplinary penalty in the nature of a reprimand. It was held (p. 770) '' that the functions of the Board have actually become intertwined with the operation of the Department of Public Safety, and particularly the Police Bureau, in violation of the rights of a police officer against whom a complaint was filed.''

We reach a contrary conclusion. The legislative grant of power to the City Council to establish citizen advisory boards (Charter § 12-31, formerly § 521) was valid. (N. Y. Const., art. IX, § 2, subd. [c] ; Municipal Home Rule Law, § 10, subd. 1, par. [i].) In considering the provisions of the Charter (§ 8-34, formerly § 387) vesting in the Commissioner power to discipline police officers and those of chapter 17 (formerly ch. 10) of the Municipal Code creating a Police Advisory Board it must be recognized that when some function '' can by fair construction be assigned to both acts, and they confer different powers to be exercised for different purposes, both must stand, though they were designed to operate upon the same general subject '' (*Woods* v. *Board of Supervisors of Madison County*, 136 N. Y. 403, 409).

A committee of the Council in recommending adoption of chapter 10 (now ch. 17) of the code wrote in part as follows: '' The creation of a Police Advisory Board simply takes cognizance of a feeling, whether warranted or not, among many responsible citizens that adequate channels for communicating grievances involving police action do not exist. Those with public responsibility cannot ignore this feeling. * * * The board will provide a ready and simple outlet for the expression of grievances alleging excessive use of force by police for those of our citizens to whom traditional legal routes of redress are remote or unknown * * * In summary, the creation of a (board) as proposed in this ordinance, allows complaints to be registered through a non-police agency while allowing regular police procedures full opportunity to satisfy the complainant.''

Taking a closer look at the crucial section (§ 17-24, formerly § 10-10.24) — where there is disagreement between the Board and the two city officials — the extent of the power of the Board is to make public its '' recommendation ''. In the absence of any disciplinary power vested in the Board it is difficult to imagine a '' recommendation '' that could exceed one that upon the facts presented some affirmative action should be taken by

the city administration. The result would be a plain difference of opinion between city officials and the Board.

We do not share the concern of respondents that thereby some stigma would attach to the officer in question. Neither do we share the view of Special Term that the publicizing of the Board's recommendation would constitute a reprimand that only the Commissioner may impose.

Special Term to support its view cited an activity of the Board relating to plaintiff, Signor (48 Misc 2d 763, 769) and suggested that the action of the Board constituted a violation of the officer's rights under section 387 (now § 8-34) of the Charter. A reading of the quoted portion of the communication of the Board and the background material in the record demonstrates that therein the Board simply voted " to accept the recommendation of the City Administration " that the material become part of the officer's personnel files. If this was error (in the absence of filing formal charges before the Commissioner) the error was one of the city administration and not of the Board. If the officer had been wronged he presumably was entitled to legal redress to clear his personnel file.

We conclude, that fairly construed, the ordinance in no way diminishes, dilutes or infringes upon the statutory power vested in the Commissioner to fix and impose punishment for misconduct or dereliction of duty by a police officer. The limited right granted to the Board to make public its findings, in a proceeding where there is disagreement between it and the responsible city officials, would not constitute a " reprimand " within the meaning of the statutory provision vesting in the Commissioner the right to impose such a penalty. At most such publication might result in direct or implied criticism of the police officer but it is difficult to conclude that such criticism would infect the official record of the officer if the responsible city officials (Chief of Police, City Manager and Commissioner) had concluded that there was no merit to the complaint pending before the Board.

In any event, we are here construing the provisions of an ordinance and the spirit and purpose of the enactment and the objectives sought to be accomplished by the City Council must be borne in mind. (Cf. *Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677, 685.) That legislative body was attempting to strike a balance between the rights of the police officer and the rights of the citizen. To quote again from the report recommending adoption of the ordinance: " The board should contribute to rather than impair, the efficiency of police performance of allowing grievances, some real, some imagined,

to be considered by a responsible body of citizens, rather than remain, as they often do, smoldering embers of mistrust and contention between police and citizens."

If the most grievous thing that could happen to a police officer by publication of the recommendations of the Board would be criticism, direct or implied, we conclude that this would not be sufficient reason to strike down the ordinance. Policemen, like Judges are forced to make unpopular decisions and it has been written that "Judges are supposed to be men of fortitude, able to thrive in a hardy climate." (*Craig* v. *Harney,* 331 U. S. 367, 376.) "In a democratic society, one who assumes to act for the citizens in an executive, legislative, or judicial capacity must expect that his official acts will be commented upon and criticized" (GOLDBERG and DOUGLAS, JJ., concurring in *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 299).

We have examined the other contentions advanced by respondents and find them to be without merit. The order should be reversed and judgment entered declaring chapter 17 (formerly ch. 10) of the code valid and constitutional.

GOLDMAN, HENRY, DEL VECCHIO and MARSH, JJ., concur.

Order unanimously reversed on the law and facts, without costs, and judgment entered declaring chapter 17 (formerly ch. 10) of the code valid and constitutional.