Harrington *v.* Tate et al., Appellants.

Argued May 7, 1969.   Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Frank J. Pfizenmayer,* Assistant City Solicitor, and *Edward G. Bauer, Jr.,* City Solicitor, for appellants.

*Frank F. Truscott,* with him *Samuel Gorson, Otis W. Erisman,* and *Truscott & Erisman,* for appellees.

*Colbert C. McClain,* for amici curiae.

OPINION BY MR. JUSTICE COHEN, June 27, 1969:

This is an appeal from a decree in equity which abolished the Philadelphia Police Advisory Board. The sole issue to be considered is whether the Philadelphia Home Rule Charter permits the mayor to establish such a board. In considering that the Board was improperly established, the chancellor strayed far from the legal issue both by accepting testimony and in substantiating his decision. We shall not do the same.

Appellants claim statutory authorization for the creation of a board under Art. III, Ch. 1, §3-100(h), and Art. III, Ch. 9, §3-917, which read respectively: "§3-100—The executive and administrative work of the City shall be performed by: . . . (h) Such additional advisory boards as the Mayor may appoint. §3-917—The Mayor may upon request of the head of any department or of his own volition appoint a board of seven citizens to act in an advisory capacity to such department regarding the department's work or any specified phase of it."

On October 1, 1958, the mayor, by authority of the provisions of the Charter, appointed a group of men to a Police Review Board, which name was subsequently changed to Police Advisory Board, to "receive, hear, and make determinations of fact on complaints of citizens regarding actions of Police Department per-

sonnel." It seems eminently clear that the foregoing sections of the Charter permit the mayor to appoint a board to advise the police department on community relations and police discipline.

The Board operates as follows: When a complaint is filed the Board requests an investigation and report from the police department. A hearing is then set in which the complainant and his counsel, the police officer and his counsel or other police personnel representing him are present. Rules of evidence are followed. The Board renders its decisions and delivers its recommendations which are transmitted through the mayor to the Police Commissioner who may then take action.

Appellees contend that the Board is a "review" board and therefore unauthorized by the Charter and a waste of tax funds. A definition of terms is necessary to consider these contentions. A review board is a quasi-judicial body whose powers are statutory in nature, which body is entrusted with the task of exercising administrative or governmental functions. It hears evidence, considers issues, and makes decisions which are judicial in nature. An advisory board, while it may go about its tasks in much the same manner, is not statutorily charged with governmental functions and its decisions are not judicial. Those decisions are merely recommendations which the receiver thereof is free to ignore. Despite its original designation, the Police Advisory Board has always recognized this essential difference in that it made recommendations which the Police Commissioner was free to accept or ignore in disciplining the city policemen. There is no interference with the Police Department's function of disciplining the police under §5-200 of the Charter.

Two cases concerning legality of a police advisory board have been litigated in the courts of New York. *Locust Club of Rochester v. City of Rochester,* 22 N.Y.

2d 802, 292 N.Y.S. 2d 903 (1968), (SCILEPPI, J., filing a dissenting opinion), affirming on the opinion at 29 A.D. 2d 134, 286 N.Y.S. 2d 99 (1968), which opinion reversed 48 Misc. 2d 763, 265 N.Y.S. 2d 744 (Supreme Court, 1965), found a similar board both authorized and constitutional despite the fact that it *required* the police chief to file a report and permitted a publication of the decision if the Board could not agree with the police chief on the disposition of any matter. The court held that the Board's only power was to make recommendations, and hence it did not alter or impinge upon the power of the Commissioner of Public Safety to maintain discipline. It was merely advisory and therefore valid.

*Cassese v. Lindsay,* 51 Misc. 2d 59, 272 N.Y.S. 2d 324 (Supreme Court, 1966), was an attack upon the Civilian Complaint Review Board, which, despite its name, was held to be advisory in nature. There the Board was established by the Police Commissioner to aid him in processing complaints against policemen although it in no way limited the authority of the Commissioner to dispense discipline. Except for the civilian make-up of the Board, it was not unlike the Philadelphia Police Board of Inquiry.[1] The court found that there was no illegal delegation of authority, and that the Board was no more than an advisory body, and consequently sustained its validity.[2] No case has

---

[1] We have held, with respect to such boards, that: "The Board has no other function than, when convened by the Police Commissioner, to aid him by making findings and recommendations in disciplinary cases. He has no legal obligation to use the Board or continue its existence and, even if he does use it, he is not obligated to follow its recommendations." *Perry v. Civil Service Commission,* 403 Pa. 643, 645, 170 A. 2d 580 (1961).

[2] The Board was subsequently made an issue in an election and was abolished when the vote of the electorate indicated disapproval. This is, of course, irrelevant to the legality of its existence.

been cited to us in which such a board has not been sustained.

Appellees contend that the Board operates in such a way as to make it illegal. This contention must fail. The way in which a board is operating cannot affect the legality of its creation. The courts remain open to require the Board to operate in a proper manner. While we may not be satisfied with all the practices in which the Board engages, these improper practices cannot be grounds for the abolition of a legally constituted body. The Board is provided for by statute and it must not exceed its statutory powers. In approving the establishment of the Advisory Board we in no way approve its method of operation.

Appellees' arguments as to the wisdom of the Advisory Board are not directed to the issue. No citation is required for the proposition that in a system of separation of powers, the courts may not set aside administrative actions in the absence of bad faith, fraud, capricious action or abuse of power. Where, as in the present case, the advisability of the Board is a close question, this Court cannot find a manifest and flagrant abuse of discretion in establishing this body.

Decree reversed; each party to pay own costs.

Mr. Justice JONES and Mr. Justice POMEROY join in this opinion.

---

CONCURRING OPINION BY MR. JUSTICE ROBERTS:

I agree with the result reached by the majority. However, I believe that it is essential to emphasize the advisory nature of the Board, both in theory and in practice. The mayor appointed the Board as an advisory body; the Board is *incapable* of disciplining any member of the police department. Disciplinary action *may be taken by and only by* the Police Commissioner. The Board is completely powerless to direct the Police Commissioner to discipline any policeman

no matter how serious the charges against him or how clear the proof. Nor may the Board restrain the Police Commissioner from disciplining any member of the force, though the Board might believe the charges to be without foundation.

The Commissioner has a completely free hand: he may follow the Board's recommendations, refuse to follow them, or take whatever action he deems appropriate and the law permits. The Board's recommendation is merely its advice and its view in *no way* binds the Commissioner nor anyone else concerned. Whether or not the Board's recommendations are followed or rejected is clearly within the sole discretion of the Commissioner. As the Commissioner himself testified: "I also have the ultimate responsibility for discipline in the Police Department. I am very much aware of it, and *no discipline is taken against any member of my department unless I consider it just.*" (Emphasis supplied.)

Because of the Commissioner's obvious responsibility to make the decision in any disciplinary matter, in my view there is no question but that the Police Advisory Board exercises *merely* and *exclusively* an advisory function. Even if the Commissioner follows the Board's recommendation in every instance, it is apparent to all that it *is* the Police Commissioner who is making the ultimate decision and that it is he who must be held accountable for his actions. No other view of police discipline would be consistent with the charter authority of the Police Commissioner and Advisory Board.

Mr. Justice JONES and Mr. Justice POMEROY join in this opinion.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

No provision in the Philadelphia Home Rule Charter permits the Mayor to appoint a police board having

not merely advisory powers but, in practical effect, *Judicial review* powers. The Home Rule Charter provides for only two review boards, namely, a Board of Licenses and Inspection Review and the Tax Review Board. Since the Police Board was illegally created, I dissent and would affirm the decision of the Chancellor below.

Mr. Justice O'BRIEN joins in this dissenting opinion.