ALLEN L. RAMSEY

*v.*

PERTH AMBOY SHIPBUILDING AND ENGINEERING COMPANY.

[Decided December 15th, 1906.]

1. A written contract with the United States government, providing for payment "at such times and in such amounts as the officer in charge of the work might elect," cannot be varied by parol evidence that government officers stated, when attention was called to such provision just before signing, that payments could be.expected every thirty days.

2. Where a contractor fails to fulfill his contract, it is the duty of the other party to make reasonable exertions to mitigate his loss.

3. Evidence of a claim for damages for breach of contract filed with a receiver considered, and *held* not to show that the claimant could have done anything to mitigate the loss.

4. The burden of proving that damages for breach of contract could have been mitigated rests on the party guilty of the breach.

5. The provision in a shipbuilding contract giving the party contracting for the ships power to complete the work in the event of failure by the other party is not compulsory.

On appeal from the determination of a receiver.

*Mr. John B. Vreeland* and *Mr. Harrison P. Lindabury,* for the United States of America.

*Mr. Adrian Lyon* and *Mr. Frank P. McDermott,* for the receiver.

STEVENS, V. C.

This is an appeal from the disallowance by the receiver of the shipbuilding company of a claim presented by the United States.

The claim is one for damages for breach of a contract by the shipbuilding company to construct two vessels for the price of $105,000. After twenty per cent. of the work of construction had been done in the case of one of the vessels, and twelve and

a half per cent. in the case of the other, the company failed. The government readvertised. The lowest bid for two similar boats was $154,670, and these boats were built at that price. The damages demanded are the difference between this sum and the sum for which the shipbuilding company agreed to build.

The first contention is that the company was disabled from performing because the government did not make those payments on account to which it was entitled.

The contract provided for "payment to be made at such times and in such amounts as the officer in charge of the work might elect." The effort was to vary this contract by evidence to the effect that government officers stated, when attention was called to this clause, just before signing, that payments could be expected about every thirty days. No payments, in fact, were made. The statement, if proved, is obviously at variance with the terms of the writing, and for that reason inadmissible. *Naumberg* v. *Young, 44 N. J. Law (15 Vr.) 331; Hallenbeck* v. *Chapman, 72 N. J. Law (43 Vr.) 202.* It is none the less so because it is put in as evidence of custom.

It is secondly contended that the United States took too much time to approve the plans for portions of the work from time to time submitted, and so prevented the work from being done. These plans were prepared by the shipbuilding company as the work progressed and submitted to the quartermaster's department in New York. They were frequently returned with modifications and corrections. The company prepared new plans and blue-prints with these modifications and corrections embodied in them. They were again submitted to the quartermaster's department, and, if satisfactory to it, sent to the American Bureau of Shipping, for approval by that bureau, the specifications so providing. After examination by this latter body they were returned to the quartermaster's department, which returned them to the shipbuilding company. This took time. Mr. Master, the receiver's witness, said on his direct examination that the plans were very much delayed, but his cross-examination, taken in connection with the written correspondence and with the evidence of Mr. Scott, tends to show that the government acted with reasonable diligence.

It is perfectly evident, on the testimony of Mr. Master himself, that the price at which it was agreed to build was too low, and that it would have been impossible for the company, with the force of men at its disposal, to have completed the vessels within the time specified.

I can find nothing in the evidence going to show that the failure to perform the contract was due to delay in the quartermaster's office.

The point upon which receiver's counsel principally relied was that it was the duty of the government to have mitigated the loss—to have taken the partially-constructed boats and completed them.

It is said in *Benj. Sales (4th Am. ed.)* ¶ *1327* that

"in every case the buyer, to entitle him to recover the full amount of damages, must have acted throughout as a reasonable man of business, and done all in his power to mitigate the loss."

The supreme court of the United States (*Wicker* v. *Hoppock, 73 U. S. 94,* and *Warren* v. *Stoddart, 105 U. S. 224*) lays down the rule as follows: "Where a party is entitled to the benefit of a contract, and can save himself from a loss arising from a breach of it at a trifling expense or with reasonable exertions, it is his duty to do it, and he can charge the delinquents with such damages only as with reasonable endeavors and expense he could not prevent."

The rule applies as well to cases of contract as to cases of tort (*Sedgw. Dam.* ¶ *205*), and may be variously illustrated. If A breaks down B's fence, and B does not repair till months afterwards, in consequence of which cattle get in and destroy the next year's crop, B cannot sue for the loss of the crop, but only for the cost of repairing the fence. *Loker* v. *Damon, 17 Pick. 284.* If a servant be wrongfully discharged, it is incumbent upon him to seek other similar employment, and the amount earned, or that might, with reasonable effort, have been earned, will go in reduction of his damages. *Larkin* v. *Hecksher, 51 N. J. Law (22 Vr.) 135.* If A and B enter into a contract, by the terms of which A is to give B possession of certain machines, which B is to sell for A on commission, and these machines are

taken out of B's possession by C, who also tenders to B the right
to sell them in a way equally remunerative to himself, B cannot
recover from A the amount of commissions so agreed upon.
*Beymer* v. *McBride, 37 Iowa 114*. If a common carrier agrees
to transport A's oats within a certain time and fails to do so,
and the oats become mouldy in the hands of A's agent after that
time, when he might have preserved them from injury by stir-
ring, A cannot recover for the depreciation in the value of the
oats, attributable to the failure to bestow necessary care. *Hamil-
ton* v. *McPherson, 28 N. Y. 72*. If A agrees to make boilers for
B, and after the work has been commenced, B notifies A that he
rescinds the contract, it is A's duty, as soon as practicable, to
stop the work. He cannot thereafter go on to the injury of B.
*Dillon* v. *Anderson, 43 N. Y. 231*. In all these cases it was held
that the plaintiff was bound "to mitigate the loss by acting as an
ordinary man of business would have acted." The law, for wise
reasons, to quote the words of Justice Seldon, in *Hamilton* v.
*McPherson*, "imposes upon a party subjected to injury the active
duty of making reasonable exertions to render the injury as light
as possible."

But the rule requires such exertions only as are reasonable.
This is illustrated by two cases in the supreme court—*The Bal-
timore, 8 Wall. 377*, and *The Falcon, 19 Wall. 75*. In the
former case a schooner was sunk in a collision with the steamer
Baltimore in water so shoal that the masts projected eighteen
feet above the surface. It was found that the vessel could have
been easily raised and repaired, and it was held that the owner
could not recover damages as for a total loss. In the latter case
the vessel sank in five fathoms of water, and it was found that
she could not have been raised and repaired without a large
expenditure of time and money. It was held that the steamer
Falcon was liable for her full value. In the case of *The Havi-
lah, 50 Fed. Rep. 331*, the court refused to allow as damages
the cost of raising and repairing a sunken vessel so far as that
cost exceeded the value of the boat at the time of the collision.

In the light of these adjudications, let us look at the facts of
the present case. The two vessels were to cost $105,000. The
lowest bid which the government could obtain on readvertising

was $154,670. The receiver's witness, Master, says that the vessels which the shipbuilding company agreed to construct would, when completed, have been worth $85,000 apiece, or $170,000, and that the bid of $154,670 was low. He says, moreover, that the amount of work done upon the two vessels at the time the company failed was fairly represented in money by the sum of $40,000. It will thus be seen that even had the government been in a position to have gone on and completed these boats they would, in all probability, have cost not less than $114,000, and the government would still have had a claim of $9,000 against the receiver, while the receiver, who now has the incomplete vessels, would have had no further interest in them or claim respecting them. But it is not likely that the government could have finished the boats for $114,000. The photographs show that they were far from being in a condition to be launched. Their bare ribs were not even, to any considerable extent, plated. It is not shown that the government had any facilities for taking up the work where it had been left off. It had at that point no tools, no machinery, no force of men, no organization. It is not shown by the receiver that any other yard would have undertaken the work of completion at a price that would have been advantageous to him. No one can read the evidence without coming to the conclusion that it would probably have cost the government considerably more than $114,000 to have finished the vessels, or to have procured a contractor to finish them. The burden of proving that the damages sustained could have been mitigated rests upon the party guilty of the breach of contract. *Hamilton* v. *McPherson, 28 N. Y. 72; Howard* v. *Daly, 61 N. Y. 362.* The receiver has not shown affirmatively that effort and expenditure by the United States in the direction suggested by him would have resulted in any substantial benefit to the trust which he represents.

The suggestion that article 5 of the contract, which gives the United States *power* to complete the work, is compulsory, is completely met by *Bernz* v. *Marcus Sayre Co., 52 N. J. Eq.* (7 *Dick.*) *275,* lately decided by the court of errors and appeals.