144 N.J. Super. 58 (1976)
364 A.2d 563
CITY OF NEWARK, JESSE L. ALLEN, MICHAEL P. BOTTONE, ANTHONY CARRINO, ANTHONY J. GIULIANO, EARL HARRIS, SHARPE JAMES, HENRY MARTINEZ, DONALD TUCKER AND MARIE L. VILLANI, INDIVIDUALLY AND AS THE MUNICIPAL COUNCIL OF THE CITY OF NEWARK, AND FRANK D'ASCENSIO, CITY CLERK, PLAINTIFFS,
v.
JAMES BENJAMIN, COYT L. JONES, GEORGE JONES, CARL L. GREGORY AND WILBUR McNEIL, INDIVIDUALLY, AND AS THE COMMITTEE OF PETITIONERS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Argued August 23, 1976.
Decided September 1, 1976.
*60 Mr. Milton A. Buck, attorney for plaintiffs (Mr. Salvatore Perillo, First Assistant Corporation Counsel, appearing).
Mr. Bernard K. Freamon, attorney for defendants.
YANOFF, J.C.C., Temporarily Assigned.
The history of the inception of this litigation is contained in D'Ascensio v. Benjamin, 137 N.J. Super. 155 (Ch. 1975) aff'd with modification 142 N.J. Super. 52 (App. Div. 1976). A notice of petition and petition for certification have been filed by the plaintiff-appellant in that case and are now pending before the Supreme Court. However, a motion for stay pending decision by the Supreme Court was denied by the *61 Appellate Division. Neither side has suggested that pendency of the petition for certification affects this case.
The essence of the decisions of Judge Kimmelman and the Appellate Division in the D'Ascensio case is that an ordinance proposed by "initiative" pursuant to N.J.S.A. 40:69A-184 et seq. ("Initiative and Referendum") was supported by sufficient signatures to require submission to the Newark Municipal Council.
At oral argument the parties stipulated facts which need not be recited. Suffice it that from them I find as facts that on December 10, 1975, the corporation counsel of the city advised the city council that in his opinion the proposed ordinance was illegal on its face, and that on December 17, 1975 it was submitted to the council and tabled. At that time it was the opinion of the corporation counsel that the matter could not be brought to court because the issue of illegality of the ordinance could not be raised until the proposal had been put before the voters. I also find as a fact that the council was throughout advised by the corporation counsel of the status of the litigation, including stays, steps taken by way of appeal, and petition for certification.
Approximately in July 1976 the corporation counsel's office found the case of McCrink v. West Orange, 85 N.J. Super. 86 (App. Div. 1964), and then changed its opinion and decided that an action could be instituted before the initiative ordinance had been submitted to the electorate.
Thereafter, on August 3, 1976 the office of the corporation counsel wrote to the city clerk:
The City's application for a stay pending hearing on the petition for certification in the above matter was denied by the Appellate Division. As a result, you are to submit the proposed ordinance to the Municipal Council for their consideration as soon as possible.
At the same time the city clerk read to the municipal council a letter from the corporation counsel, dated December 10, 1975, in which he said in substance that the proposed ordinance "cannot be approved as to form and legality."
*62 The minutes of the meeting of the city council of that date contain the following:
A motion directing the Corporation Counsel to take an appeal from the decision by the Appellate Division of the Superior Court in the matter of the Police Review Board, was made by the Council of the Whole and declared adopted by President Harris by the following votes: * * *.
The corporation counsel interpreted this as a direction to litigate the propriety of further proceedings to enact the proposed ordinance, and on August 10, 1976 he filed a complaint for a declaratory judgment that the proposed ordinance was "null and void" and enjoining presentation of the ordinance to the Municipal Council of the City of Newark and placing it on the ballot at the next general election. I signed an order to show cause returnable on August 23, 1976.
N.J.S.A. 40:69A-191 provides that if the municipal council should fail within 60 days of the submission of a certified petition by the municipal clerk to act on an ordinance proposed by initiative, the ordinance shall be submitted to the voters. It was, therefore, open to the municipal council on the date of submission to it of the proposed ordinance by the city clerk to refrain from acting thereon for a period of 60 days, or until October 4, 1976, a date perilously close to the general election on November 2. From the standpoint of time, therefore, it seems desirable to have the matter submitted in sufficient time prior to the general election to permit a thorough resolution of all legal issues.
Among the points made by defendants at the outset was that the matter should not have been submitted under R. 4:67-1 (a) as a summary action. However, at oral argument on August 23, 1976, after stipulating the facts already mentioned, both parties agreed that the matter should be heard as a summary proceeding under the cited rule. Both agreed, also, that the matter was ripe for decision on the papers submitted, as if on motion for summary judgment.
*63 The proposed ordinance reads as follows:
Be it enacted by the people of the City of Newark, New Jersey pursuant to the authority provided in N.J.S.A. 40:69A-184 an Ordinance establishing a Civilian Complaint Review Board and setting forth its functions.
Section 1. It is the public policy of the City of Newark to provide a viable and effective remedy to any of its citizens who present claims of police misconduct involving the use of unnecessary or excessive force and to eliminate all forms of illegal police conduct as hereafter described.
Section 2. In order to carry out this public policy there is hereby established an autonomous Civilian Complaint Review Board.
Section 3. The Civilian Complaint Review Board shall have jurisdiction over all complaints received from citizens of the City of Newark alleging police misconduct involving police corruption, the use of unnecessary or excessive force, abuse of authority, discourteous or insulting language or ethnic discrimination.
Section 4. Upon the receipt of a sworn complaint, the Civilian Complaint Review Board shall authorize the conduct of an investigation to determine whether there is any substantial disagreement as to the facts alleged. Within thirty days (30), the investigators shall report to the Board whether or not conciliation of the dispute is feasible. If the Board determines that conciliation is feasible, the Board shall order that the parties attempt to informally resolve the complaint. The Board shall determine, within 20 days of any attempt at conciliation, whether conciliation attempts have been successful. In the event the Board determines that conciliation has not been successful, the Board shall, within 20 days order a formal hearing to be conducted. Any police officer required to appear as a respondent in such hearing shall be accorded full rights to due process of law including the right to representation by counsel and cross-examination of witnesses.
Section 5. The Civilian Complaint Review Board shall have power to:
a) Receive complaints, effect conciliation thereof and conduct hearings into all charges of police misconduct within the definitions of this Ordinance;
b) Issue subpoenas to compel the appearance of witnesses and the production of documents;
c) Conduct public hearings with respect to police practices within the scope of the ordinance and make appropriate recommendations to the Police Director and Municipal Council as to appropriate dispositions of charges of police misconduct;
d) In those cases where the Board determines that criminal prosecution is warranted it may, after concurrence of an [sic] majority of its members, submit the results of its investigations and any *64 findings after formal hearing, along with its recommendations to the County Prosecutor for further action;
e) Develop appropriate legislation for presentation to the Municipal Council for the elimination of police misconduct;
f) Assist the Police Director and such persons as he chooses to designate, in developing rules, regulations and policies to eliminate acts of police misconduct;
g) Make all rules and regulations necessary to carry out the purposes of this Ordinance.
Section 6. The principal executive officer of the Civilian Complaint Review Board shall be known as the Director of the Civilian Complaint Review Board. He shall be appointed by the Civilian Complaint Review Board to serve at its pleasure and receive such compensation as fixed by ordinance.
Section 7. The Civilian Complaint Review Board shall be composed of 19 members, three from each ward and four (4) elected at large. Ward members of the Board shall be elected in accordance with applicable state election laws governing municipal council elections and shall serve a term of four (4) years. At-large candidates shall be elected in accordance with applicable state election laws governing municipal council elections and shall serve a term of two (2) years. Members shall receive such annual compensation as fixed by ordinance.
Section 8. The duties of the Director of the Civilian Complaint Review Board shall be as prescribed by the Board. He shall, with the concurrence of the Board, have the power to promulgate such rules, regulations, and to issue such orders, as are necessary to effectuate the purposes of this ordinance and as are reasonable and consistent with due process of law. The Director may, with concurrence of the Board, and within the limits of the funds appropriated or otherwise made available, appoint such employees as he may deem necessary to carry out the functions of the Board and may retain or employ consultants to render professional or technical assistance.
Section 9. This ordinance shall take effect upon final passage and publication and in accordance with the laws of the State of New Jersey.
A summary of the reasons given by the City of Newark in support of the relief requested is as follows:
(1) The City of Newark is chartered under Mayor-Council Plan C of the Faulkner Act (N.J.S.A. 40:69A-55 et seq.). The proposed ordinance, by establishing an elected Civilian Complaint Review Board would violate the statute by creating a governmental body for which the statute makes no provision.
*65 (2) The proposal to confer subpoena power upon the proposed board is illegal, since subpoena power can be created only by action of the Legislature.
In opposition defendants urge that
(1) An action for declaratory judgment may not be maintained because there is no existing ordinance to interpret.
(2) The action must fail because it constitutes an improper interference with the legislative process, since the voters have not yet acted on the initiative ordinance.
(3) The City of Newark is estopped, by reason of the stipulated facts, from litigating the issues raised herein, because it could have raised the same issues in the earlier litigation, but did not.
(4) The ordinance has no constitutional defect.
(5) The ordinance is compatible with the statutory scheme embodied in the Faulkner Act.
Defendants argue that an action for a declaratory judgment under N.J.S.A. 2A:16-53 is not the proper procedure because there exists no municipal ordinance to be construed. It is true that the statute reads in pertinent part:
A person interested under a * * * municipal ordinance * * * may have determined any question of construction or validity arising under the * * * ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder.
and that technically there is no ordinance in existence at this time. However, McCrink v. West Orange, supra; Smith v. Livingston Tp., 106 N.J. Super. 444 (Ch. Div. 1969), aff'd o.b. 54 N.J. 525 (1969), and Sparta Tp. v. Spillane, 125 N.J. Super. 519 (App. Div. 1973), certif. den. 64 N.J. 493 (1974), all were cases in which declaratory judgments were sought before an ordinance had been enacted. In each of these cases the courts declared the rights of the parties and in each held the proposed ordinance invalid. Decisions such as these carry out the requirement of N.J.S.A. 2A:16-51 that the "purpose of the statute * * * is to settle and afford relief from uncertainty and insecurity with respect *66 to rights, status and other legal relations." In connection therewith, see Weinstein v. Newark, 100 N.J. Super. 199 (Law Div. 1968); 26 C.J.S., Declaratory Judgments, § 9 at 64.
I therefore come to the conclusion that the objection that a declaratory judgment action will not lie is unfounded.
McCrink v. West Orange, supra, disposes of the contention that the action may not be maintained because the ordinance has not yet been submitted to the voters. In that case, in a Faulkner Act city, the governing body introduced an ordinance to increase the salary ranges of patrolmen and firemen. Before the second and final reading, an initiative petition was filed with the town clerk proposing an ordinance fixing for three years, with exceptions, the salaries of firemen and patrolmen. The clerk certified the petition as having sufficient number of signatures. The governing body considered the ordinance and rejected it. Prior to submission to the voters at the next general election, a complaint was filed in the Law Division demanding judgment that the proposed ordinance was invalid, enjoining the town clerk from taking any action to certify the ordinance, and seeking other relief. The trial court granted the requested relief. The Appellate Division affirmed. The defendants there argued, as do defendants here, that no action may be brought "to interfere with the legislative process where it involves testing a statute or ordinance prior to the enactment thereof, regardless of whether the act has to be adopted by a legislative body or by a vote of the citizenry." McCrink, supra, 85 N.J. Super. at 90. Responding to the argument the Appellate Division said:
However, at oral argument their counsel readily admitted that there is a recognized exception to the rule for which they contend  for example, where the proposed ordinance is defective on its face, or where the petitioners have failed to follow out the statutory requirements. [at 91]
There seems to be good reason why this should be so. If an *67 ordinance is invalid on its face, it would be a useless expenditure of effort and money to submit it to the electorate before its validity has been determined.
I reject also the contention that the municipality is estopped from bringing the action.
It must be noted that in the first suit (D'Ascensio v. Benjamin, supra), the only issue was whether a sufficient number of voters had signed the initiative petition to require the clerk to accept it and perform the ministerial function of submitting it to the council. The issue of the validity of the initiative ordinance was not raised in that litigation. It is conceivable that in December 1975, when the Corporation Counsel was already of the opinion that the ordinance was invalid, the City of Newark could have instituted an action for declaratory judgment. Perhaps it should have. But the fundamental question is whether the delay of the city in instituting this action has done any harm to defendants. The fact is that no significant harm has occurred to them. Delay without prejudice does not create an estoppel, West Jersey Title, etc., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958). To the same effect, see Rickenbach v. Noecker Shipbuilding Co., 66 N.J. Super. 580, 587 (Ch. 1961). The city, in fact, assumed no inconsistent position; it simply failed to raise the question of the facial invalidity of the proposed ordinance. Springfield Tp. v. Bensley, 19 N.J. Super. 147 (Ch. 1952), which defendants cite in support of their position, is a case in which a building permit was issued and the owner proceeded to make substantial expenditures in reliance thereon. The municipality was held to be estopped from revoking the building permit. I recognize that there may be estoppel against public bodies "where the interests of justice, morality and common fairness clearly dictate that course." Gruber v. Raritan Tp. Mayor and Tp. Com., 39 N.J. 1, 13 (1962). Here, however, defendants have not established a factual basis similar to that in Gruber, supra. Additionally, the doctrine of estoppel cannot be used *68 to force a municipality to propose an act which is not within its general powers. East Orange v. Bd. of Water Com'rs, etc., 41 N.J. 6, 19 (1963); Slurzberg v. Bayonne, 29 N.J. 106 (1959). Therefore, the issue of whether the Faulkner Act authorized enactment of this ordinance must be resolved.
I conclude that an initiative ordinance[1] of this kind may not lawfully be enacted by a municipality governed under the Faulkner Act.
A municipality has no power other than that delegated to it by the State. Ringlieb v. Parsippany-Troy Hills Tp., 59 N.J. 348 (1971); Bucino v. Malone, 12 N.J. 330 (1953). That power may be broad indeed when exercised by its governing body in the manner authorized by statute. See Sente v. Clifton Mayor and Mun. Coun., 66 N.J. 204, 217 (dissenting opinion (1974)). However, what is involved here is not whether the Newark council had the power to enact an ordinance for civilian review of police conduct, but whether it can be done by initiative in a Faulkner Act city. The answer is found in a comparison of Meridian Development Co. v. Edison Tp., 91 N.J. Super. 310 (L. Div. 1966), with Smith v. Livingston Tp., supra. Meridian held, on the basis of N.J. Const. (1947), Art. I, par. 2, that "All political power is inherent in the people"; that the citizens of Edison had the power to amend a zoning ordinance by initiative. It was in that respect explicitly disavowed by Smith, an Appellate Division decision affirmed on opinion below. There Judge Mintz stated:
While under Art. I, par. 2 of the 1947 New Jersey Constitution all political power is inherent in the people, it does not necessarily follow that the voters may propose any ordinance and adopt the same at the polls through the initiative process. [106 N.J. Super. at 452; emphasis the court's]
*69 The decision concluded that the citizens of a Faulkner Act municipality may not amend a zoning ordinance by initiative, since the Zoning Act (N.J.S.A. 40:55-34, 35) explicitly conferred that power upon specific municipal bodies. The logic of Smith was followed in Sparta Tp. v. Spillane, supra, a referendum case. Just as in Smith, the general right of initiative gave way to the specific provisions of the Zoning Act, here that same general right must be subordinated to the provisions of N.J.S.A. 40:69A-56 which confers complete power to govern a municipality upon its elected council. The statute reads:
Each municipality hereunder shall be governed by an elected council, and an elected mayor and by such other officers and employees as may be duly appointed pursuant to this article, general law or ordinance.
The Faulkner Act sets forth a complete plan for the administration of a municipality. It contemplates that the governing body shall be an elected council with power to appoint municipal officials. It makes no provision for any other governing body, or for dilution or fractionalization of the powers of the governing body. The council is empowered to conduct investigations by N.J.S.A. 2A:67A-1. See Band's Refuse v. Fair Lawn, 62 N.J. Super. 522 (App. Div. 1960), certif. den. 33 N.J. 387 (1960), rev'd 64 N.J. Super. 1 (App. Div. 1960), certif. den. 34 N.J. 67 (1961); Evanko v. Duff, 63 N.J. Super. 548 (App. Div. 1960). N.J.S.A. 40:48-25 confers subpoena power upon the council during such investigations. See Eggers v. Kenny, 15 N.J. 107, 122 (1954). In the case of charges of police abuse the proposed ordinance would create another elected body of 19 members having powers to some degree coextensive with the powers of the council. It would exercise, at least, similar investigatory powers. In my view this would be an impermissible infringement upon the authority conferred upon the municipality by the Faulkner Act. Legislative intent is the guideline. It is clear to me that the Legislature intended *70 that a municipality would be governed by one body and one body only, except where it specifically made other provision. Other bodies participate in the process of governing the municipality. Examples are boards of adjustment (N.J.S.A. 40:55-36), planning boards (N.J.S.A. 40:55-1.8), boards of education (appointed by the mayor under N.J.S.A. 18A:12-7), or elected, where the electorate has chosen to have an elected board of referendum by virtue of specific statutory provision (N.J.S.A. 18A:12-18), and boards of alcoholic beverage control (N.J.S.A. 33:1-5). But all of these are created by specific statutory provision. I know of no case, and no case has been cited to me, which holds that a municipal body may be created, except upon such legislative authorization or appointment under Section 56, supra. Indeed, the contention of defendants is not that the powers of the municipality may be divided, but that the proposed ordinance does not do so. The creation of another elected body with investigatory powers would accomplish just that forbidden purpose.
A number of cases have passed upon the legality of boards of this type. In Harrington v. Tate, 435 Pa. 176, 254 A.2d 622 (Sup. Ct. 1969) such a board, established by the mayor pursuant to the provisions of the city charter, was held legal. In Cassese v. Lindsay, 51 Misc.2d 59, 272 N.Y.S.2d 324 (Sup. Ct. 1966), a similar board established by the police commissioner was held a valid exercise of power under the New York City charter. This was followed by a petition for a referendum to amend the New York City charter by restricting the personnel of any civilian review board to "persons who are, and have been for one year prior to such appointment, full-time members or administrative employees of the Police Department." The statutes of the State of New York provide that a city charter may be amended by referendum. Opposition to the petition for referendum was grounded on the argument that a referendum may not be used for the purpose of altering membership on the board which had been created by the Police Commissioner of the *71 City of New York. The petition for a referendum on the question thus posed was held valid in Cassese v. Katz, 26 App. Div.2d 248, 273 N.Y.S.2d 227 (App. Div. 1966), with two judges dissenting, and aff'd 18 N.Y.2d 694, 273 N.Y.S.2d 474, 220 N.E.2d 266 (Ct. App. 1966) with two judges dissenting.[2] While the New York case validated the petition for referendum, all judges involved at every level agreed that the basic issue was whether the petition for referendum was authorized by statutory law of the state. The same principle underlies the ruling in Locust Club of Rochester v. Rochester, 29 A.D.2d 134, 286 N.Y.S.2d 99 (App. Div. 1968); aff'd 22 N.Y.2d 802, 292 N.Y.S.2d 903, 239 N.E.2d 646 (Ct. App. 1968),[3] app. dism. 393 U.S. 481, 89 S.Ct. 708, 21 L.Ed.2d 688 (1969). Judge Scileppi's dissent in Locust, supra, turned upon the question whether the Civilian Review Board was authorized by the municipal law. For a review of the considerations involved in a civilian police review board, see Note "The Administration of Complaints of Civilians against Police," 77 Harv. L. Rev. 499 (1963-1964).
I conclude that the cases which have sustained civilian review boards agree with the underlying thesis of this opinion, that the basic issue is whether a statute or ordinance authorizes the creation of such a board. I conclude that our statutes do not permit such a board to be established by initiative. It may well be that the City of Newark could create a civilian review board under its power to appoint subordinate officers contained in § 56 of the Faulkner Act. However, this is not what is proposed here.
*72 The final matter to be considered is whether the provisions of the ordinance authorizing issue of subpoena are valid. Clearly, they are not. Subpoenas may not be issued, except upon constitutional and legislative authority. See United States v. Minker, 350 U.S. 179, 76 S.Ct. 281, 100 L.Ed. 185 (1956); 97 C.J.S. Witnesses § 21 at 372. No case holding that authority to issue subpoenas may be created by ordinance has been cited, and research has not disclosed any. Every instance in which subpoenas may be issued in this State is one in which the basic authority comes from a statute.[4]
With respect to this, defendants argue that N.J.S.A. 2A:67A-1 et seq. authorizes a municipal body to issue subpoenas. A close reading of that statute demonstrates that this is not so. In fact, the subpoena power of a municipal investigating body is set forth in N.J.S.A. 40:48-25. See Eggers v. Kenny, supra. I conclude that a municipality may not create the power of subpoena.
At oral argument counsel for defendants stated that the subpoena power was separable from the balance of the proposed ordinance, and that it was viable without it. My own conclusion is that this is not so. Without the power to subpoena witnesses, hearings before the board would be inadequate. This would be especially true in the case of police officer witnesses. Nor could one expect a police officer charged with misconduct to appear before the board without subpoena. Hearings before the board without such witnesses, in all likelihood would render the board only an instrument for public relations.
*73 It should be obvious that the foregoing decision has no relationship to the merit or lack of merit of a civilian review board. A court's role is to determine whether legislation is legal under constitutional and statutory limitations, not to determine whether legislation should be enacted.
For the foregoing reasons the prayers requested in the complaint are granted. A permament injunction will issue prohibiting submission of the initiative ordinance to the electorate at the next general election.
NOTES
[1] For a discussion of the history and purposes of initiative and referendum, see Judge Kimmelman's opinion in D'Ascensio v. Benjamin, supra.
[2] For ancillary proceedings, see Cassese v. City Clerk of City of N.Y., 18 N.Y.2d 813, 275 N.Y.S.2d 523, 222 N.E. 2d 389 (Ct. App. 1966).
[3] 21 N.Y.2d 955, 289 N.Y.S.2d 984, 237 N.E.2d 235; 22 N.Y.2d 894, 294 N.Y.S.2d 536, 241 N.E.2d 741, deal with ancillary proceedings in that case
[4] See, generally, N.J.S.A. 26:1A-47, subpoenas issued by the commissioner of the department of health; N.J.S.A. 54:42-4; subpoenas issued by the director of the division of taxes; N.J.S.A. 33:1-35; subpoenas issued by the director of the division of alcoholic beverage control; N.J.S.A. 40:48-25, limited powers of the municipal council; subpoenas issued by boards of education, N.J.S.A. 18A:6-20.