**In the Matter of B.J. THOMAS, INC., Debtor.**

**Bankruptcy No. 81–331–Bk–T.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Nov. 29, 1984.

See also, Bkrtcy., 34 B.R. 417.

Holland & Knight, Tampa, Fla., for creditor.

Don Stcihter, Tampa, Fla., for debtor.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 reorganization case and the immediate matter under consideration is an objection to the claim of American Cyanamid Company (Cyanamid) in the amount of $111,600 filed by B.J. Thomas, Inc., (Debtor). The claim is based on an alleged breach of a demolition and salvage contract by the Debtor, which caused Cyanamid to engage a third party to complete the contract after the Debtor's breach, and to incur expenses in the amount of $111,600. The Debtor challenges both the validity and the amount of

the claim. The Debtor's objection is based on the contentions that the Debtor or someone operating on behalf of the Debtor was both willing and able to complete the contract at no extra cost to Cyanamid, therefore, the claim asserted by Cyanamid is justified.

The Debtor is a Florida Corporation engaged in the business of earthmoving, demolition and salvaging scrap metal. Cyanamid, a Maine corporation, maintains its principal place of business in New Jersey and is engaged in phosphate mining in various locations including central Florida. In connection with its Florida operation, Cyanamid maintained at the time pertinent to the transaction involved, a chemical plant at Brewster, Florida until June, 1971 when Cyanamid closed the Brewster plant.

The facts germane to the matter under consideration as appear from the record developed at the final evidentiary hearing are as follows:

On August 7, 1972 Cyanamid and the Debtor entered into an agreement for the demolition of the Brewster plant. The Debtor paid Cyanamid $7,500 for the salvage expected to be realized from the site and agreed to complete the demolition by August 7, 1975, three years from the date of the contract. (Cyanamid's Exh. No. 2)

Shortly after the contract was executed, the Debtor commenced work on the project. It appears that the Debtor worked on the job for approximately fifteen (15) to eighteen (18) months. It also appears that Cyanamid requested the Debtor's assistance in connection with a new plant site located at Fort Lonesome by way of equipment and workers to transport pipe, equipment and machinery. The Debtor also aided Cyanamid by unloading pipe from railroad cars which required the use of the Debtor's 55-ton crane and also the services of the Debtor's project foreman who operated the crane.

In late 1973, B.J. Thomas, President of the Debtor, orally requested an extension to complete the demolition contract. J.C. Stewart, who was at that time the purchasing agent for Cyanamid, advised Thomas to put the request in writing. On December 6, 1973, (Exh. No. 3) B.J. Thomas, on behalf of the Debtor, submitted a written request for additional time to complete the Brewster project because of a labor shortage and unforeseen complications. On May 10, 1974, Cyanamid extended the deadline to August 7, 1977. (Exh. No. 4).

The Debtor continued to perform services for Cyanamid unrelated to the demolition project. On July 26, 1978, the Debtor sought an additional extension of time in which to complete the Brewster plant demolition. The Debtor's stated reason for seeking a 36 month extension was the existence of a weak market for scrap metal. (Exh. No. 5). On August 21, 1978, Cyanamid granted an eighteen month extension and extended the time to complete the contract until February 7, 1980. (Exh. No. 7)

Sometime in 1978, the Debtor removed its equipment and workers from the Brewster site, and A.J. Thomas, B.J.'s brother, took over the salvage operation. It appears that Cyanamid was never apprised of the arrangement between the brothers. A.J. continued to work at the Brewster site until June, 1981 when Cyanamid demanded possession of the premises. As noted earlier, the second extension expired on February 7, 1980 and the Debtor did not seek an additional extension until June 11, 1981. It should be noted, however, that B.J. Thomas alleges that in 1978, he received verbal assurance from one Robert Timberlake that the Debtor would have until 1982 to complete the demolition of the Brewster plant, since Cyanamid did not intend to mine the Brewster site until 1982. On June 24, 1981, H.K. Johnson, the Administrative Services Manager for Brewster Phosphates (a partnership of Cyanamid and Kerr-McGee Corporation) notified the Debtor in writing that the extension would not be granted, (Exh. No. 10) and advised the Debtor to vacate the premises. There is no doubt that, at the time the Debtor was removed from the project, the demolition work was not completed.

Upon notification to discontinue work and remove all equipment from the site,

A.J. Thomas arranged a meeting with Robert Leitzman, the Manager of Brewster Phosphates, to advise him that he was willing to complete the project at no additional cost to Cyanamid. It appears that Mr. Leitzman rejected the offer, informed A.J. Thomas that Cyanamid intended to bid the uncompleted demolition work and advised him that he was welcome to submit a written bid to the purchasing department. In early 1982, bids were in fact solicited by Cyanamid, and A.J. Thomas did not submit a bid. On September 20, 1982, (Exh. No. 22) an actual contract to complete the demolition was awarded to William K. Kimmons & Sons, Inc. The project was completed by Kimmons in early April, 1983 at a cost to Cyanamid of $111,600.

It is Cyanamid's position that the Debtor breached the 1972 demolition contract by failing to perform within the time permitted under the terms of the original contract and the subsequent written extensions granted by Cyanamid on May 10, 1974 and August 21, 1978, respectively; that the contract expired by its own terms; that thereafter, Cyanamid elected to terminate the relationship of the parties; that Cyanamid contracted with a third party to complete the demolition work; and that Cyanamid is entitled to recover damages for the costs incurred by Cyanamid to complete the demolition at the Brewster site.

The Debtor contends, however, that the informal conversation between B.J. Thomas and Timberlake, which occurred during August or September of 1978, at which time Timberlake allegedly represented that the Debtor would have until 1982 to complete the project, constituted an oral modification of the contract; that Cyanamid waived the contractual deadline by permitting the Debtor to continue on the job for 16 months after the second extension expired on February 7, 1980; that the assurance by Timberlake and the fact that the Debtor was allowed to remain on the job after February 7, 1980 actually caused the delay in the performance of the contract; and, finally, that Cyanamid failed to reasonably mitigate damages inasmuch as A.J. Thomas offered to complete the contract at no additional cost to Cyanamid.

It should be noted that Paragraph 17 of the demolition agreement provides that the Agreement is a New Jersey agreement and shall be construed pursuant to the law of New Jersey and provided inter alia as follows:

"This Agreement constitutes the entire agreement between the parties with reference to the subject matter, and shall not be changed or modified orally, shall be deemed to be a New Jersey Agreement, and shall be construed and interpreted according to the laws of the State of New Jersey."

There is no question that the Debtor breached the demolition agreement executed by the parties on August 7, 1972 by failing to complete the demolition of the Brewster Chemical Plant within the time required by the Contract and that Cyanamid paid $111,600 to William K. Kimmons & Sons to complete the project by contracting with a third party. The question of whether Cyanamid is entitled to the allowance of its claim in the amount requires a determination of the validity of the defenses raised by the Debtor, e.g. oral modification, waiver and Cyanamid's alleged failure to mitigate damages.

First, the Debtor asserts that the contract was orally modified by Richard C. Timberlake who represented to B.J. Thomas, in mid-1978, that the demolition need not be completed until early 1982. The Court finds that this contention is without merit for the following reasons: According to the testimony, B.J. Thomas encountered Timberlake in a corridor at the chemical plant office sometime in mid-1978, where Timberlake represented that the company would not be mining the Brewster site until early 1982 and that B.J. Thomas would have until that time to complete the demolition. Timberlake testified that he did not recall the conversation. However, whether or not the conversation actually occurred, this Court is satisfied that such a conversation does not rise to the level of a valid binding oral modification of the contract.

As noted earlier, the contract specifically provides that the agreement "... shall not be changed or modified orally..." Consistent with this provision, B.J. Thomas was always advised to request any extension in writing. Each time, Cyanamid responded to such request in writing. It is unreasonable to assume that the procedure for obtaining an extension in mid-1978 would differ materially from the established practice, particularly in light of the fact that at the approximate time of the Timberlake conversation, B.J. Thomas had already submitted a written request for an extension and was awaiting a response, or had just received written notification that the contract was extended until February 7, 1980.

In any event, the practice of written authorization never varied and it is this Court's opinion that any reliance by B.J. Thomas on remarks allegedly made during a corridor conversation was both misplaced and unreasonable, and was certainly not a binding modification of the contract.

■ Nor can this Court accept the proposition advanced by the Debtor that Cyanamid waived its rights to insist on timely performance of the contract. It is well recognized that a waiver is the intentional relinquishment of a known right. As stated, waiver is

a voluntary act "and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded and insisted on." (cite omitted) It is requisite to waiver of a legal right that there be "a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part;" (sic) "a waiver, to be operative, must be supported by an agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition.

*West Jersey Title Co. v. Industrial Trust Co.*, 27 N.J. 144, 141 A.2d 782 (1958); *Merchants Indemnity Corp. of N.Y. v. Eggleston*, 68 N.J.Super. 235, 172 A.2d 206 (App.

Div.1961), *aff'd*, 37 N.J. 114, 179 A.2d 505 (1962); *George F. Malcolm, Inc. v. Burlington City Loan and Trust Co.*, 115 N.J.Eq. 227, 170 A. 32 (Ch.1927) *aff'd* 140 A. 918 (N.J.1928).

■ Applying the foregoing principle, this Court is satisfied that Cyanamid did not waive its right under the Contract to have the job completed by February 7, 1980. While it is clear that Cyanamid did not demand possession of the premises until June 24, 1981, when the Debtor sought a third extension of time to complete the work, Cyanamid did not waive its rights under the contract by failing to enforce the 1980 deadline, and allowing the Debtor to remain on the job for an additional sixteen (16) months for the following reasons. Paragraph 14 of the original agreement provides:

Any failure by Cyanamid at any time, or from time to time, to enforce any of the terms or conditions of this agreement shall not constitute a waiver of such terms or conditions, and shall not affect or impair such terms or conditions in any way, or the right of Cyanamid at any time to avail itself of such remedies as it may have for any breach of such terms or conditions.

■ Despite the language of the agreement, which belies the theory of implicit waiver, the Court must consider whether Cyanamid's delay to declare the contract in default estops Cyanamid from asserting the breach. The doctrine of equitable estoppel is premised upon conduct rather than a promise and requires:

(1) [c]onduct amounting to a misrepresentation or concealment of material facts known to the party allegedly estopped and unknown to the party claiming estoppel;

(2) done with the intention or expectation that it will be acted upon by the other party; and

(3) on which the other party does in fact rely in such a manner as to change his position for the worse.

*Carlsen v. Masters, Mates & Pilots Pension Plan Trust*, 80 N.J. 334, 403 A.2d 880 (1979). While mere delay in enforcing

one's rights without any prejudice to another does not create an estoppel, *City of Newark v. Benjamin,* 144 N.J.Super. 58, 364 A.2d 563 (Ch.Div.1976) *aff'd* 75 N.J. 311, 381 A.2d 793 (1978); *West Jersey Title & Guarantee Co. v. Industrial Trust Co.,* 141 A.2d 787 (N.J.1958), where a party to a contract acts in such a manner as to indicate that he does not intend to hold another to a contract provision, he *may* be deemed to have waived his right to enforce the provision. *Neustadter v. United Exposition Service Company,* 14 N.J.Super. 484, 82 A.2d 476 (1951).

■ In this case, the Court is satisfied that the delay to declare the breach did not create an estoppel inasmuch as there is no evidence to suggest that Cyanamid's failure to declare the breach after the expiration of the February 7, 1980 deadline was intended to or did in fact, induce the Debtor to believe it was entitled to complete the project; nor does this Court find that the Debtor relied on Cyanamid's conduct so as to change its position for the worse. On February 7, 1980, the Debtor had not completed performance under the contract, and although permitted to remain on site for eighteen additional months, the Debtor still failed to complete the work. While the Debtor asserts that Cyanamid actually contributed to the Debtor's failure to timely perform, the Court finds this contention without merit. Although the Debtor continued to work on unrelated Cyanamid projects, B.J. Thomas allowed his brother to assume control over the Brewster demolition and his brother failed to timely complete the project.

Finally, the Court must consider the Debtor's contention that Cyanamid failed to mitigate its damages inasmuch as A.J. Thomas offered to complete the demolition project at no cost to Cyanamid. Thus, it is the Debtor's position that Cyanamid's failure to accept the offer precluded any claim for consequential damages.

■ The Supreme Court of New Jersey defines the concept of "mitigation of damages" as "a reduction of the amount of damages based on facts which show that the plaintiff's conceded cause of action

does not entitle him to so large an amount as the showing on his side would otherwise justify." *White v. Township of North Bergen,* 77 N.J. 538, 391 A.2d 911 (1978). Pursuant to New Jersey law, the injured party is charged with an affirmative duty to make reasonable attempts to minimize damages, *Ramsey v. Perth Amboy Shipbuilding & Engineering Co.,* 72 N.J.Eq. 18, 65 A. 461 (Ch.1906), however, a claimant need only exercise reasonable diligence and ordinary care in his attempt to do so. *Associates Metals & Minerals Corp. v. Dixon Chemical & Research, Inc.,* 82 N.J. Super. 281, 197 A.2d 569 (App.Div.1963). The burden of proving a failure to mitigate damages rests upon the party who committed the breach. *Ramsey,* 65 A. at 463.

■ In the case at bar, the Court is satisfied that the Debtor has failed to show with the requisite degree of proof that Cyanamid did not exercise reasonable care in an attempt to mitigate damages resulting from the Debtor's breach. The Debtor failed to complete the demolition of the Brewster site after nearly seven and a half years and the record reveals that A.J. Thomas' three-year presence on the site did not result in substantial progress. Although Cyanamid invited A.J. Thomas to submit a bid to complete the demolition after declaring the breach, A.J. Thomas declined to do so. In light of the apparent lack of progress by A.J. Thomas and his failure to submit a formal bid despite his expressed willingness to complete the project for nothing, this Court finds that Cyanamid's rejection was not an unreasonable exercise of business judgment.

In light of the foregoing, this Court is satisfied that the objection to claim filed by B.J. Thomas, Inc. shall be overruled. Accordingly, it is

ORDERED, ADJUDGED and DECREED that the Objection to Claim of American Cyanamid Company filed by B.J. Thomas, Inc., be and the same is hereby overruled. It is further

ORDERED, ADJUDGED and DECREED that the Claim of American Cyanamid in the amount of $111,600 be and the same is hereby allowed as filed.